## AFFIDAVIT IN SUPPORT OF APPLICATION FOR A SEARCH WARRANT

I, Thomas B. Russell, being duly sworn, depose and state as follows:

### Affiant Background and Purpose of Application

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of thirteen electronic devices—described below and in Attachment A—that are currently in law enforcement's possession in the District of Vermont and the seizure from those devices of the electronically stored information described in Attachment B.

2. This application arises from United States Border Patrol's encounters with Ronald KIKOMEKO and Philip KIZITO during human-smuggling investigations. KIKOMEKO, a citizen of Uganda, was detained on suspicion of violating 8 U.S.C. § 1324 on two occasions: first on June 13, 2023, when he was found to have three citizens of the United Kingdom and one citizen of Canada who had just entered the United States illegally in his vehicle in Derby, Vermont; and, second, on July 15, 2023, when he was found to have three citizens of the United Kingdom who had just entered the United States illegally in his vehicle in Newport, Vermont. During the July 15 event, Philip KIZITO, a citizen of Uganda, was also in KIKOMEKO's vehicle.

3. The items to be searched are the following:

    a. From Event 1 on June 13, 2023, one green Apple iPhone and two Motorola phones, each seized from the vehicle being driven by KIKOMEKO;

    b. From Event 2 on July 15, 2023, one Apple iPad, one black Qualcomm phone, and one small black phone (unknown manufacturer) seized from the center console of the vehicle being driven by KIKOMEKO;

1

    c.    From Event 2 on July 15, 2023, one black smart watch seized from KIKOMEKO; and

    d.    From Event 2 on July 15, 2023, three black Samsung phones, one blue Nokia phone, one black Motorola phone, and one black Apple iPhone seized from KIZITO's backpack,

(collectively, the "Devices"). Currently, the Devices are located in the evidence safe at the U.S. Border Patrol Newport Station, 373 Citizens Road, Derby, Vermont. Based on my training and experience, the Devices have been stored in a manner such that the data on them would remain intact and in the same condition as they were at the time of the seizure of the Devices.

    4.    The applied-for warrant would authorize the forensic examination of the Devices for the purpose of seizing electronically stored data, particularly described in Attachment B, that would evidence human smuggling activities by the users of the Devices, specifically violations of 8 U.S.C. § 1324.

    5.    I am a Border Patrol Agent (BPA) Intelligence (Intel) [BPA(I)] with the United States Department of Homeland Security, Office of Border Patrol. I have been employed as a BPA since August 2011. I am currently assigned as an Intelligence Agent, and I work at the Newport Border Patrol Station in Newport, Vermont. I received formal training in the identification and investigation of alien smuggling activities both at the United States Border Patrol Academy in Artesia, New Mexico, from August 2011 to January 2012, and also through regular and recurring on-the-job training and annual Virtual Learning Center course certification.

    6.    Based on my training and experience, I am aware that individuals working together to commit crimes often use their cellular phones to contact one another, to research related topics, to navigate while driving, and to coordinate meeting locations. These tasks are frequently

2

necessary in the Swanton Sector Area of Responsibility (AOR); given the remote and rural nature of the AOR, arranging meetings at precise times and navigating to locations unlikely to appear on printed maps often requires the use of cellular devices. Further, I am aware that cellular phones and the cellular network often generate and record data without the phone users necessarily being aware of or able to delete the data.

7. I have received formal training as well as on-the-job training on using the XRY digital forensics extraction program as well the XAMN digital forensics analysis program. The XRY program is a mobile forensic extraction program that it used with a computer to extract data from many types of electronic devices, including smart phones. XAMN is a digital forensics analysis program that is used for decoding, analysis, and reporting of data from electronic devices, including smart phones. XRY and XAMN are not the only programs used in forensic examination of electronic devices, but they are some of the tools available to me locally. There are additional tools and programs available for alternative extraction methods at the Swanton Sector Intelligence Unit, and I am familiar with the capabilities of the specialists employed there to extract and analyze data from electronic devices.

8. The information contained within this affidavit is based upon my training and experience, my own investigative efforts, and investigation by other law enforcement officers with whom I have spoken or whose reports I have reviewed. The following is either known to me personally or has been related to me by persons having direct knowledge of the events. This affidavit is meant to set forth probable cause to believe that the violations occurred, and it does not include every fact known to law enforcement about the events described below. Unless otherwise specified, the statements described in the following paragraphs are related in sum and substance and are not meant as direct quotations or complete descriptions.

## Probable Cause

Event 1 – Derby Bike Path

9. On June 13, 2023, United States Border Patrol Agents were advised by Swanton Sector Communications ("Dispatch") that a remote monitoring camera along the border between the United States and Canada had been activated, indicating that possible cross-border activity was occurring. The camera transmitted images that Dispatch employees were able to view shortly after the images were captured. The images appeared to show an adult male and an adult female illegally entering the United States from Canada near the Bike Path in the town of Derby, Vermont. There is not a port of entry at that location. In the transmitted images, each of the adults appeared to be carrying a small child as they crossed the border. The timestamp on the images showed that the subjects illegally entered the United States at approximately 1:57 p.m. on June 13, 2023. A map of the area and the remote camera images appear below for reference.



4



10. The Bike Path in Derby is an area frequently used by subjects to illegally enter the United States. The Bike Path offers easy access on the Canadian side of the border as well as easy egress on the United States side due to the close proximity of the roads on each side of the border. Due to the ease of access and egress, the Bike Path is frequently used by subjects to illegally enter the United States while avoiding walking long distances through difficult terrain.

11. Supervisory Border Patrol Agent (SBPA) Michael Totten and Border Patrol Agent (BPA) Mark Danna, who are assigned to the Newport Station, were able to view the remote camera images. They responded to the event by positioning themselves along U.S. Highway 5 ("Route 5") in Derby, which they knew to be a likely route of egress from the border near the Bike Path. SBPA Totten and BPA Danna observed a silver Ford Escape bearing Massachusetts license plate 3HBC38 traveling south on Route 5 toward the intersection in the village of Derby where Route 5 turns west and joins Vermont Route 105. SBPA Totten and BPA Danna were able to see multiple people in the Ford Escape, including a female with distinctive red hair that appeared to be the same person they had seen on the remote camera images.

12. Using their marked Border Patrol vehicle, SBPA Totten and BPA Danna conducted a vehicle stop near the intersection, adjacent to Bianchi Memorials. The Ford Escape yielded promptly. They approached the Ford Escape, identified themselves as Border Patrol Agents, and conducted an immigration inspection on the occupants. The driver was identified as Ronald KIKOMEKO, a citizen of Uganda. The two adult passengers were identified as Brien Goodman and Rose Goodman, both citizens of the United Kingdom; they had two very young children with them who were identified as L.G. (a citizen of the United Kingdom) and J.G. (a citizen of Canada). All four passengers were found to be present in the United States illegally, and KIKOMEKO initially appeared to have no legal status in the United States. All five individuals were transported to the Newport Border Patrol Station for further investigation and processing. While at the Newport Station, agents interviewed Brien Goodman, and he acknowledged he and his family had entered the United States illegally.

13. Following searches in Department of Homeland Security (DHS) databases, the agents found an entry suggesting that KIKOMEKO had been granted a status in 2017 that

6

allowed him to remain in the United States. KIKOMEKO was thereafter released from the Newport Station on June 13, 2023, pending further investigation. Agents processing the Ford Escape seized one green Apple iPhone that had been in a holder mounted on the dashboard and two Motorola phones that were found in the center console area. Because of their locations, the seized devices appeared to belong to KIKOMEKO. KIKOMEKO later claimed ownership of the Apple iPhone and two Motorola devices at the Newport Border Patrol Station, and they were listed as his property.

14. The following day, agents examined the Apple iPhone seized from KIKOMEKO during the June 13, 2023, event. The phone's contents appeared to have been deleted or locked remotely. An image of the phone's lock screen appears below.



Event 2 – Guay Farm Road

15. On July 15, 2023, at approximately 5:05 p.m., Border Patrol Agents were advised by Dispatch that a remote monitoring camera along the border between the United States and Canada had been activated, indicating that possible cross-border activity was occurring. The camera—located near the north end of Guay Farm Road in the town of North Troy, Vermont—transmitted images that Dispatch employees were able to view shortly after the images were captured. The images appeared to show an adult male and an adult female illegally entering the United States from Canada while carrying a small child. There is not a port of entry in the vicinity of Guay Farm Road, which is a road that is approximately a half-mile long leading north from Bear Mountain Road to its termination at the international border. A map of the area and the remote camera images appear below for reference.



8







9

16. At approximately 5:08 p.m., Border Patrol Agents were advised by Dispatch that a black four-door sedan with a Massachusetts license plate and silver trim around the windows had activated a remote camera near Bear Mountain Road, traveling toward the location where the subjects had just illegally entered the United States from Canada. At approximately 5:11 p.m., Dispatch advised agents that the same vehicle was now traveling on Bear Mountain Road away from the Guay Farm area. Images from the remote camera appear below.



17. BPA Jonathan Mayfield responded from the east side of Lake Memphremagog and traveled to the area of Exit 26 on Interstate 91, which he believed would be a likely route of egress for a vehicle departing Guay Farm Road to the southeast. When BPA Mayfield exited the interstate at Exit 26, he noticed a black four-door sedan with silver trim around the windows bearing a Massachusetts license plate. BPA Mayfield followed the sedan onto Interstate 91 southbound and observed that the sedan was swerving within its lane and was slowing down and speeding up irregularly. He also observed that the driver and the passenger in the middle of the back seat were looking back at his marked Border Patrol vehicle in what he assessed as a nervous manner. BPA Mayfield initiated a vehicle stop by activating the emergency equipment on his Border Patrol vehicle on southbound Interstate 91 in the vicinity of mile marker 156.

18. BPA Mayfield identified himself as a Border Patrol Agent and conducted an immigration inspection of the occupants. The driver was identified as Ronald KIKOMEKO, the

same individual agents had encountered on June 13, 2023. The passenger seated in the middle of the back seat, who had been looking back at BPA Mayfield's vehicle, was identified as Philip KIZITO, a citizen of Uganda. The other occupants were identified as Matthew Clark, Bridey Bell, and M.T.B., all citizens of the United Kingdom. Clark and Bell claimed to be a family unit, traveling with their infant daughter M.T.B., and stated they had crossed into the United States illegally because they were attempting to flee the Irish Republican Army. All the vehicle's occupants were detained and transported to the Newport Border Patrol Station for further investigation and processing.

19. Agents processing the black sedan seized one Apple iPad, one black Qualcomm phone, and one small black phone from the center console of the sedan. Agents also removed a black smart watch from KIKOMEKO's wrist. Because of their locations, those seized devices appeared to belong to KIKOMEKO. KIKOMEKO later claimed ownership of those devices at the Newport Border Patrol Station, and they were listed as his property. The agents also seized three black Samsung phones, one blue Nokia phone, one black Motorola phone, and one black Apple iPhone from a camouflage backpack Philip KIZITO possessed in the backseat of the sedan. KIZITO claimed ownership of those devices at the Newport Station, and they were listed as his property.

20. Based on the foregoing, I submit there is probable cause to believe that on June 13, 2023, Ronald KIKOMEKO violated 8 U.S.C. § 1324 by transporting individuals in furtherance of their illegal entry into the United States while knowing or recklessly disregarding the fact that they were aliens. I also submit there is probable cause to believe that on July 15, 2023, Ronald KIKOMEKO and Philip KIZITO violated 8 U.S.C. § 1324 by transporting individuals in furtherance of their illegal entry into the United States while knowing or recklessly disregarding

the fact that they were aliens. I further submit that the information contained in this affidavit establishes probable cause for the issuance of a search warrant authorizing the examination of the Devices seized from Ronald KIKOMEKO and Philip KIZITO further described in Attachment A and the seizure therefrom of data described in Attachment B.

21. Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

Dated at Burlington, in the District of Vermont, this __15th__ day of August 2023.

*Attested to by reliable electronic means*
Thomas B. Russell, Border Patrol Agent (Intel)
U.S. Border Patrol, Department of Homeland Security

Attested to by the applicant in accordance with the requirements of Federal Rule of Criminal Procedure 4.1 by Facetime call on August __15__, 2023.

Hon. Kevin J. Doyle, Magistrate Judge
United States District Court
District of Vermont